UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA DAVENPORT
O/B/O J.E.D., A MINOR,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

Case No. 2:16-cv-11963
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.    REPORT**

      Plaintiff, Yolanda Davenport, on behalf of her minor son J.E.D., brings this

action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner

of Social Security ("Commissioner") denying his application for supplemental

security income (SSI) benefits. Although unrepresented at the hearing, Plaintiff

proceeds on appeal with the assistance of counsel.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment, the Commissioner's cross motion for summary judgment, and the administrative record (DE 7).

## A.    Background

At the time Plaintiff filed the February 11, 2014 application for SSI benefits, her son was almost 7 years old.  She alleged that J.E.D. has been disabled since April 19, 2012.  (R. at 111-116.)  Plaintiff's application was denied, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 66-80.) ALJ David F. Neumann held a hearing on May 14, 2015 and subsequently determined that J.E.D. was not disabled within the meaning of the Social Security Act.  (R. at 24-65.)

On June 17, 2015, Plaintiff appointed a representative, attorney Andrea Hamm.  (R. at 23.)  Thereafter, Plaintiff submitted a teacher questionnaire, a request for review of the hearing decision, and letter brief.  (R. at 12-22, 152-158.) On April 6, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7.)  ALJ Neumann's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action on behalf of her minor son.

## B.    The Administrative Record

The administrative record in this case contains: **(1)** medical treatment records from S. Rao Talla, M.D., F.A.A.P. (R. at 159-171, 188-190; *see also* R. at 145-147, 191); **(2)** education information in the form of teacher questionnaires from C. Wilinski and Ann Kay and records from Dickerson East Elementary School (R. at 130-137, 14-22, 192-193); and **(3)** consultative examination (CE) reports by Laura Wayburn, M.A., and David Hayter, Ph.D. (R. at 172-182, 183-187). These records will be discussed as necessary below.

### C.    Hearing Testimony

At the May 14, 2015 administrative hearing, Plaintiff and the then eight-year-old J.E.D. provided testimony. (R. at 43-65.) As credibility is not an issue in this appeal, the testimony will only be discussed as necessary below.

### D.    The Administrative Decision

#### 1.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner determines whether a child is disabled by analyzing three sequential steps: first, the child must not be engaged in "substantial gainful activity;" second,

the child must have a "severe" impairment;[1] and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a). To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment.  In addition, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  If a child's impairment does not meet a listed impairment, the impairment may be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  20 C.F.R. § 416.926a.

To determine functional equivalence, there are six "domains" that an ALJ considers: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being.  20 C.F.R. § 416.926a. Functional equivalence is demonstrated by the existence of an "extreme" limitation in one of the six domains, or a "marked" limitation in two of the six.  20 C.F.R. § 4156.926a(d).  An extreme limitation is one that interferes "very seriously" with these abilities.  If the impairment or combination of impairments does not meet or

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

medically or functionally equal a listing, the child is not disabled.  20 C.F.R. §

416.924(a).

## 2. The ALJ's Decision

Applying this framework, the ALJ concluded that J.E.D. was not disabled.

At **Step 1**, he determined that J.E.D. has not engaged in substantial gainful activity

since February 11, 2014, the application date.  (R. at 30.)  At **Step 2**, the ALJ

identified the severe impairment of speech/articulation disorder.  (R. at 30.)  At

**Step 3**, the ALJ found that J.E.D.'s severe impairment does not meet or medically

equal the severity of one of the listed impairments.  (R. at 30.)  He further found

J.E.D.'s impairment does not functionally equal the severity of the listings.  In

making this determination, the ALJ determined that J.E.D. had "less than marked

limitation" in the domains of: 1) acquiring and using information; 2) attending and

completing tasks; 3) interacting and relating with others; and 4) caring for himself.

(R. at 16-21.)  He concluded that J.E.D. had no limitation in the domains of 1)

moving about and manipulating objects; and 2) health and physical well-being.  (R.

at 30-39.)

## E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.      Analysis**

**1.      Severe Impairments at Step 2**

At Step 2, the ALJ stated that "the evidence of record does not show [ADHD] has caused more than minimal impact on the claimant's functioning[,]" and, thus, concluded that "ADHD is a nonsevere impairment in this case."  (R. at 30.)  Plaintiff asserts that this conclusion does not comply with SSR 96-3p, while the Commissioner argues that the ALJ properly considered ADHD.

To be considered a "severe" impairment at Step 2, the claimant must have a "medically determinable impairment" that causes more than a "slight abnormality."  20 C.F.R. § 416.924(c).  An impairment is "medically determinable" when it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); *see also* S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment.").

Here, the ALJ's Step 3 discussion supports his conclusion at Step 2. Specifically, the ALJ acknowledged:

- Plaintiff's representation that her son has been disabled since April 19, 2012 due to a speech disorder, learning problem and ADHD.  (R. at 31, 120)

- CE Wayburn's May 3, 2014 report documenting Plaintiff's advice that "a school social worker recommended he undergo an evaluation for ADHD."  (R. at 32.)  In fact, that report stated that the social worker "recently had a meeting with [Plaintiff] and expressed concern that [J.E.D.] is present[ing] signs of ADHD."  (R. at 173-174)

- Dr. Talla's May 27, 2014 diagnosis of ADHD and prescription of Ritalin®, which is a brand name for methylphenidate (R. at 33, 190)

- Plaintiff's mother's May 14, 2015 testimony that "he is less aggressive since being prescribed Ritalin," "his teachers have reported improvement in his behavior[,]" and "his treatment for

his ADHD was being handled exclusively through Dr. Talla[.]"
(R. at 33.)  In fact, Plaintiff testified, with respect to the
methylphenidate prescription, "calms him down some[,]" and
"[h]is teachers can see the difference," when he takes it before
school or if he misses a dose.  (R. at 54.)

(R. at 31-33.)  In addition, the Court notes J.E.D.'s testimony that, when he works

on homework, it is "a little easy" to pay attention.  (R. at 60.)

Plaintiff argues that the opinions of J.E.D.'s last two teachers, Wilinski and

Kay (R. at 130-137, 14-22), and the ADHD diagnosis from J.E.D.'s treating

physician, Dr. Talla (R. at 190-191), "support marked limitations" in the functional

domains at issue in this appeal – J.E.D.'s ability to "acquire and use information"

and "attend and complete tasks."  (DE 11 at 21.)  In addition, Plaintiff claims that

her testimony is consistent with Wilinski and Kay's opinions concerning

symptomology and points to her own testimony regarding Dr. Talla's prescription

of Metadate® CD 10 mg and how it works.  (DE 11 at 21-22, R. at 53-54; *see also*

R. at 191.)

The Court should affirm the ALJ's Step 2 determination that Plaintiff's

ADHD is a non-severe impairment.  (R. at 30.)  Initially, as discussed below in

greater detail, the ALJ appropriately considered the opinion evidence as to the

domains at issue in this appeal.  More to the point, there is support in the record for

the ALJ's conclusion.  For example, CE Wayburn observed that J.E.D. "was

allowed to hold a ball during tasks with auditory input for verbal responding, but

otherwise did not need additional supports for maintaining attention[,]" and "[r]esponses were in the appropriate time frame." (R. at 174.) Also, Dr. Hayter did not observe restlessness or distractibility, and noted that "none of the behavior" documented as significantly elevated in what appears to be the Connors' Parent Rating Scale "was observed during the clinical examination . . .[.]" (R. at 187.) In addition, while Dr. Talla diagnosed ADHD in May 27, 2014 (R. at 190-191), "[t]he mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Finally, even if J.E.D.'s ADHD should have been designated as a severe impairment at Step 2, any such error was harmless, because, here, the ALJ considered it at Step 3. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.") (citing *Maziarz*); *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("Because the agency continued with the remaining steps in the disability determination and because the agency 'properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity,' the court held that any error at step two was

harmless and that it was therefore 'unnecessary to decide' whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment.") (citing *Maziarz*).[2]    In addition to the aforementioned citations to ADHD (R. at 31-33), the ALJ also pointed to Plaintiff's testimony about the effects of J.E.D.'s medication upon his focus and behavior (*see* R. at 54) as partial support for the conclusion that J.E.D. had "less than marked limitation" in "attending and completing tasks." (R. at 36.) To be sure, in her May 9, 2014 records review, state agency psychological examiner Dr. Williams-White concluded that Plaintiff's ADD/ADHD was severe; nonetheless, she further concluded that Plaintiff "does not meet, equal or functionally equal any of the listings[,]" and, in so doing, made specific reference to Listing 112.11 ("Neurodevelopmental disorders"). (R. at 69-71.) *Warsinski v. Comm'r of Soc. Sec.*, No. 13-14136, 2014 WL 6974670, at *10 (E.D. Mich. Dec. 9, 2014) ("I suggest that any failure to designate ADHD as severe or non-severe was harmless error where the ALJ considered the ADHD as well as records from examiners who considered the ADHD, and there is no evidence of limitations related to the same that were not already addressed by the

---

[2] *See also Bertuzzi v. Comm'r of Soc. Sec.*, No. 5:15-CV-11623, 2016 WL 4706935, at *8 (E.D. Mich. June 24, 2016) (Patti, M.J.), *report and recommendation adopted*, No. 15-CV-11623, 2016 WL 4662482 (E.D. Mich. Sept. 7, 2016) (Levy, J.) ("an error early in the sequential process as to a particular impairment may be rendered harmless by the ALJ's treatment of that impairment in a later step of the process.") (referencing cases).

RFC.") (Edmunds, J., accepting and adopting report and recommendation of Binder, M.J.).

There being support in the record for the ALJ's Step 2 determination that Plaintiff's ADHD was non-severe, and any such error at Step 2 having been rendered harmless by the ALJ's treatment of ADHD at Step 3, the Court should affirm the ALJ's conclusion that the evidence of record does not show that J.E.D.'s ADHD "has caused more than minimal impact on the claimant's functioning." (R. at 30.)

### 3. Analysis of J.E.D.'s Functional Domains at Step 3

The ALJ determined at Step 2 that J.E.D.'s speech/articulation disorder was a severe impairment, and, at Step 3, he further concluded that the impairment did not meet, medically equal, or functionally equal the severity of the listings. (R. at 30.) Of the six domains considered in determining functional equivalence, this appeal involves two, namely the ALJ's conclusions that J.E.D. has "less than marked limitation" in "acquiring and using information" and "attending and completing tasks." (DE 11 at 12-17; R. at 34-36.)

### a. Acquiring and Using Information

In this domain, an assessment is made as to how well a child acquires or learns information, and how well the child uses the information he or she has

learned. 20 C.F.R. § 416.926a(g). In concluding that J.E.D. has *less than marked limitation* in acquiring and using information, the ALJ explained:

> Although the claimant continues to receive speech therapy for an articulation / expressive language impairment, he has never required special education instruction for a learning disorder. Furthermore, his WAIS-IV test scores from May of 2014 are consistent with "average range of intellectual functioning," and he had no difficulty understanding or responding to questions during the disability hearing (2F, 3F, 6F).

(R. at 34-35.) In other words, the ALJ relied upon the CE reports of Wayburn and Hayter, the education information from Dickerson East Elementary School, as well as his own observations of J.E.D.'s demeanor and testimonial performance at the May 14, 2015 hearing, in support of his conclusion. (R. at 172-182, 183-187, 192-193; *see also* R. at 43-65.)

### b.      Attending and Completing Tasks

This domain considers how well the child is able to focus and maintain attention and how well the child carries through and finishes activities. 20 C.F.R. § 416.926a(h). In concluding that J.E.D. has a less than marked limitation in attending and completing tasks, the ALJ explained:

> Although the claimant's former first grade teacher has described him as impulsive and having "short attention span," he showed no evidence of restlessness or distractibility during his examinations with Dr. Hayter or Ms. Wayburn. Furthermore, Ms. Davenport testified that his focus and behavior have improved with medication, and that his teachers have reported improved conduct and focus at school (4E, 2F, 3F).

13

(R. at 35-36.)  In other words, the ALJ relied upon the CE reports of Wayburn and Hayter, as well as the Wilinski teacher questionnaire, in support of his conclusion. (R. at 172-182, 183-187, 130-137.)

### c.    Opinion evidence

As this Court can best tell, Plaintiff's first three assertions of error take issue with the ALJ's treatment of the opinion evidence as to his conclusions that Plaintiff had "less than marked limitation" in the domains of "acquiring and using information" and "attending and completing tasks."  (DE 11 at 12-20.)  More specifically, it seems that Plaintiff is challenging the ALJ's assignment of weight to the opinions of three consultants (CEs Wayburn and Hayter and state agency psychological consultant Williams-White) over the opinions of those who had a closer relationship with J.E.D. (teachers Kay and Wilinski, treating physician Talla, and J.E.D.'s mother):

### i.    S. Rao Talla, M.D. (treating physician)

J.E.D. has treated with Dr. Talla since his birth in 2007.  (R. at 146, 191.) The administrative record contains office treatment notes spanning a period from October 29, 2008 through July 10, 2014.  (R. at 159-169, 188-190; *see also* R. at 145-146).  Plaintiff claims that Dr. Talla's opinion should have been given "significant weight" due to "the length of time" he has interacted with Plaintiff. (DE 11 at 20.)

However, the ALJ appropriately considered the records from J.E.D.'s treating physician, expressly noting no less than three of them. (R. at 32-33.) More to the point, having described Dr. Talla as a "pediatrician" and further having cited records from this source as early as October 2008 and as late as May 27, 2014, it is clear that the ALJ took into account the examining and treatment relationship factors. 20 C.F.R. §§ 404.1527(c)(1),(2), 416.927(c)(1),(2).

Plaintiff's motion cites to Dr. Talla's December 12, 2014 letter, which, among other things: notes that he has treated J.E.D. since 2007; contends J.E.D. was first evaluated for ADD/ADHD in 2012; and, asserts that J.E.D. was "recently put on medication in May 2014, to help control his ADD/ADHD." (DE 11 at 8, 21, R. at 191; *see also* DE 11 at 20.) However, in his citation of Dr. Talla's May 27, 2014 notes, the ALJ acknowledged Dr. Talla's diagnosis of ADHD and prescription of Ritalin. (R. at 33, 190; *see also* R. at 148, 191.) Thus, the ALJ took Plaintiff's ADHD diagnosis and related prescription into consideration in arriving at his functional domain conclusions.

### ii.    Chris Wilinski (1st Grade teacher)

On March 21, 2014, Wilinski completed a teacher questionnaire. As to the domains at issue in this appeal, Wilinski noted: **(a)** "short attention span[,]" **(b)** "aggressive, unwanted attention to specific students[;]" **(c)** help from peer tutors; and **(d)** many ratings of "serious problem" or "very serious problem." (R. at 131-

132; *see also* R. at 32.)  The ALJ assigned Wilinski's questionnaire "little weight," on the basis that "the symptoms he described therein are inconsistent with the opinions proffered by Dr. Hayter and Ms. Wayburn, both of which are internally consistent and substantially supported by the medical and other education records presented."  (R. at 33-34.)

Plaintiff takes issue with the ALJ's deference to the opinions of three consultative examiners (Williams-White, Hayter and Wayburn) rather than to J.E.D.'s teachers (Wilinski and Kay).  (DE 11 at 14.)  Plaintiff points out that Wilinski "witnessed Plaintiff's behavior for nine consecutive months for five days a week for hours at a time[,]" and, as such, was "in a better position to examine Plaintiff's behavior" than were the one-time evaluators (CEs Hayter and Wayburn) upon whom the ALJ relies.  (DE 11 at 16.)  Moreover, Plaintiff contends that Wilinski's opinion is consistent with Plaintiff's (Ms. Davenport's) and Ms. Kay's opinions of J.E.D.'s behavior and should have been given "significant weight" due to "the length of time" he interacted with Plaintiff.  (DE 11 at 20.)

Still, the ALJ was permitted to reject Mr. Wilinski's opinion.  As the pertinent SSR provides, "[e]ducational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers[,]" are "non-medical sources."  SSR 06-03P, *2 (S.S.A. Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513, 416.913(a)(4).  The SSA

recognizes that teachers are "valuable sources of evidence for assessing impairment severity and functioning[,]" who often "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03P, *3. Fittingly, the opinion evidence factors "can be applied to opinion evidence from 'other sources.'" *Id*. at *4. Moreover:

> For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the *nature and extent of the relationship* between the source and the individual, the source's *qualifications*, the source's area of *specialty or expertise*, the degree to which the source presents relevant evidence to *support* his or her opinion, whether the opinion is *consistent with* other evidence, and any other factors that tend to support or refute the opinion.
>
> An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity *may*, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this *could* occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.

*Id*. at *5-*6 (emphases added).

As noted above, the ALJ expressly considered Mr. Wilinski's opinion. In so doing, he recognized him as Plaintiff's "then-first grade teacher." (R. at 32.) Thus, the ALJ recognized, at least, "the nature and extent of the relationship" between Wilinski and J.E.D. SSR 06-03p. Moreover, the ALJ discounted

Wilinski's description of J.E.D. as "impulsive" and having a "short attention span," on the basis that the CE reports "showed no evidence of restlessness or distractibility during his examinations . . . [.]"  (R. at 36.)  In this regard, the Court notes that Wilinski's March 21, 2014 opinion predates the May 2014 prescription of Ritalin / Metadate / methylphenidate.  (R. at 137, 190-191.)  In any event, while Mr. Wilinski may have had a more longitudinal relationship with J.E.D., the ALJ determined that the teacher questionnaire was inconsistent with other evidence, a factor which SSR 06-03p encourages the ALJ to consider.

### iii. Laura Wayburn, M.A., CCC-SLP/L & David L. Hayter, Ph.D. (consultative examiners)

On May 3, 2014, J.E.D. underwent a consultative examination with Wayburn for speech and language evaluation.  She noted, among other things, "Jaiden has an extremely short attention span."  (R. at 174.)  Her impressions included "mild articulation delay" and "borderline expressive language skills."  (R. at 172-182.)  On the same date, Dr. Hayter conducted a clinical study / mental status / intellectual examination.  He also noted "Short attention span."  (R. at 183.) His diagnoses included "phonological disorder" and "average intellectual functioning."  (R. at 183-187.)

The ALJ cited to each of these CE reports at great length.  (R. at 32-33.) Furthermore, he described their examination findings as "consistent with" Dr.

Williams-White's functional domain assessment. (R. at 33.) In addition, the ALJ made the following notations:

- the CEs met with J.E.D. "before he was started on Ritalin," and "neither observed him to be distractible, restless, or impulsive."

- Dr. Hayter "specifically noted that Ms. Davenport's description of the claimant's behavior, attention span, conduct, and learning disorder were grossly inconsistent with the objective and clinical findings."

- Dr. Hayter "found the claimant to have 'average' intellectual functioning, which is consistent with the absence of special education involvement for a learning disorder."

(R. at 33, 36.) Finally, as noted above, the ALJ considered the CE reports "internally consistent" and "substantially supported by the medical and other education records presented." (R. at 34.)

Plaintiff asserts that Dr. Hayter's and Ms. Wayburn's reports "are merely consultative examination opinions." (DE 11 at 14.) However, under the then-operative regulations, "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). *See also* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) ("Federal or State agency medical or psychological consultants are highly qualified and

experts in Social Security disability evaluation.") (effective Mar. 27, 2017).

Therefore, the ALJ was permitted to rely up on them.

> ### iv. Sheila C. Williams-White, Ph.D. (state agency psychological consultant)

On May 9, 2014, Dr. Williams-White opined that Plaintiff was "less than

marked" in "acquiring and using information" and "attending and completing

tasks." In support of this conclusion, Dr. Williams-White noted, among other

things:

- Plaintiff "is performing in the Borderline to Average range[,]" *which the Court notes is supported by the Wayburn CE report's assessment of "expressive and receptive language evaluation." (R. at 176-177.)*

- Plaintiff's "test score pattern indicates memory and processing to be in the Borderline range[,]" *which the Court notes seems to be supported by CE Hayter's CE report's IQ Index renderings of 75 for processing speed and 77 for working memory, with a full scale IQ of 85, placing score "in the average range of intellectual functioning." (R. at 186.)*

- Teacher "indicates many serious problems[,]" *which the Court notes is supported by the 1ˢᵗ Grade teacher's (Wilinski's) ratings of "serious problem" or "very serious problem" in the domain areas of "acquiring and using information" and "attending and completing tasks." (R. at 131-132.)*

- Claimant "is not in special education[,]" *which the Court notes is supported by the SSA disability report (R. at 122), the Hayter CE report's "academic history," (R. at 184) and the Dickinson East Elementary form indicating that J.E.D. is eligible for special education in "speech & language impairment[.]" (R. at 192.)*

(*See* R. at 70.)  While not in as much detail, the ALJ expressly referenced Dr.

Williams-White's conclusions regarding the six functional domain categories and,

then, gave "considerable weight" to Dr. Williams-White's functional domain

assessment, explaining that it was "consistent with the totality of evidence

presented[,]" including Dr. Hayter and Ms. Wayburn's examination findings.  (R.

at 33.)

Plaintiff takes issue with this assignment of weight, seemingly because Dr.

Williams-White was only a "nonexamining source[] [who had] no examining or

treating relationship with [J.E.D.] . . . [.]"  20 C.F.R. §§ 404.1527(c)(3),

416.927(c)(3).  (DE 11 at 14.)  Yet, this same regulation provides that "the weight

we will give their medical opinions will depend on the degree to which they

provide supporting explanations for their medical opinions."  *Id.*  Here, even if the

ALJ did not explicitly state it, Dr. Williams-White provided explanations for her

opinions on the functional domains at issue, and it is clear that the ALJ favored this

state agency opinion on the consistency factor.  20 C.F.R. §§ 404.1527(c)(3),

416.927(c)(3).  Plaintiff is essentially asking this Court to reweigh the evidence,

which is not permitted on appeal, as it may not "resolve conflicts in evidence . . . ."

*Bass*, 499 F.3d at 509.

> **v.    Plaintiff Davenport (Claimant J.E.D.'s mother)**

As the ALJ acknowledged, Plaintiff's February 11, 2014 application for child SSI benefits alleges that J.E.D. has been disabled since April 19, 2012 with a speech disorder, learning problem and ADHD. (R. at 31, 120.) In addition, the ALJ considered Plaintiff's March 13, 2014 daily activities report, which was completed on her 7-year-old son J.E.D.'s behalf. (R. at 31, R. at 125-129.) In the end, the ALJ found Plaintiff Davenport's assertions concerning the intensity, persistence and limiting effects of J.E.D.'s impairments "to be less than fully supported by the evidence[,]" noting, among other things, that "there are virtually no clinical reports corroborating the severity of symptoms alleged through Ms. Davenport's application and Daily Activities Report." Moreover, with reference to Plaintiff's testimony, and, seemingly, also to J.E.D.'s testimony, the ALJ observed: "Ms. Davenport even acknowledged that her son's teachers had reported improvement in conduct and behavior, and that his articulation skills continued to develop through speech therapy instruction." As such, the ALJ permissibly found Plaintiff to be "only partially credible." (R. at 33.)[3]

In her brief, Plaintiff cites to certain points of her testimony, such as that relating to: J.E.D. repeating first grade (R. at 50); her concern he would have to repeat it a second time (R. at 61-62); J.E.D.'s issues with attention and

_____

[3] Plaintiff testified that J.E.D.'s teachers can "see the difference" when he takes his medication before school (or does not take it) (R. at 54), and Plaintiff affirmed that he gets speech therapy at school and is "able to pronounce things a little better this year than last year[,]" (R. at 59-61).

pronunciation, which Plaintiff submits are "similar" to the difficulties outlined by

J.E.D.'s teachers (R. at 51-53); and Dr. Talla's prescription of Metadate (R. at 53-

54). (*See* DE 11 at 9, 16, 21). In addition to contending that her own opinion is

*consistent with* the teachers' (Wilinski's and Kay's) opinions, Plaintiff contends

that her opinion should have been given significant weight due to the length of

time she has interacted with Plaintiff. (DE 11 at 20.) However, as discussed above

and below, the ALJ appropriately addressed the Wilinski opinion, the Kay opinion

is not from the relevant time period, and the ALJ permissibly found Plaintiff to be

"only partially credible." Moreover, Plaintiff's brief does not set forth a developed

argument challenging the ALJ's credibility assessment. For these reasons, the

Court should conclude that the ALJ appropriately addressed Plaintiff Davenport's

opinions.

### vi.    Kay

On June 18, 2015, classroom teacher Ann Kay completed a teacher

questionnaire. (R. at 14-22.) This exhibit was submitted to the Appeals Council;

however, in its April 6, 2016 denial of Plaintiff's request for review, the Appeals

Council explained that, because J.E.D.'s case was decided through June 2, 2015,

"[t]his new information is about a later time[,]" and "does not affect the decision

about whether you were disabled beginning on or before June 2, 2015." (R. at 2.)

As such, Plaintiff's reliance upon Ms. Kay's opinion is misplaced. (*See*, *e.g.*, DE 11 at 15.)

### vii.    SSR 09-1p – The "Whole Child" approach

At Step 3, the ALJ stated: "[a]s provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-lp, the undersigned has evaluated the 'whole child' in making findings regarding functional equivalence." (R. at 31.) Related to Plaintiff's opinion evidence argument is her assertion that the ALJ the ALJ did not comply with SSR 09-1p in rating the severity of J.E.D.'s limitations. (DE 11 at 17-18.) SSR 09-1p provides, in part:

> In general, if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments. Such a child will have a limitation, even if he is functioning well with the help or support.

> The more help or support of any kind that a child receives *beyond what would be expected for children the same age without impairments*, the less independent the child is in functioning, and the more severe we will find the limitation to be.

SSR 09-1P, *6-*7 (S.S.A. Feb. 17, 2009) (emphasis added). *See also* 20 C.F.R. § 416.924a ("Considerations in determining disability for children."), SSR 09-2p ("DETERMINING CHILDHOOD DISABILITY—DOCUMENTING A CHILD'S IMPAIRMENT-RELATED LIMITATIONS").

Here, as to the relevant period, Plaintiff points to the Wilinski teacher questionnaire, the facts that J.E.D. received special education and speech therapy, and the medication he takes for ADHD (R. at 130-137, 170, 190-192). She then takes the position that J.E.D. is receiving "a substantial amount of assistance from his teachers to stay on task and to complete his coursework[,]" and "support far *beyond what would be expected for children of the same age without impairments* . . . [.]" (DE 11 at 18 (emphasis added).)

However, as previously noted, the ALJ appropriately discounted certain aspects of Mr. Wilinski's questionnaire and took into consideration Dr. Talla's diagnosis of ADHD and prescription for Ritalin. In addition, the ALJ expressly noted the April 2012 test report by Nina Fracassa, TSLI (Teacher of Speech and Language Impaired), which recommended that Plaintiff "receive speech and language services . . .[.]" (R. at 32, 170.) Relatedly, in forming his conclusion that J.E.D. has "less than marked limitation" in "acquiring and using information," the ALJ acknowledged that, although J.E.D. "continues to receive speech therapy for an articulation/expressive language impairment, he has never required special education instruction for a learning disorder." (R. at 35, 192.) The questions of how much "less independent the child is in functioning" or of whether J.E.D. is receiving "a substantial amount of assistance" are inherently linked to a weighing

of the evidence, a task which the ALJ handled appropriately. The Court will not reweigh the evidence here.

### G. Conclusion

In sum, the ALJ's opinion is supported by substantial evidence, and Plaintiff has not shown reversible error. "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion," as Plaintiff argues here and as may well be the case, the standard of review requires the Court to defer to the ALJ's well-supported findings. *Blakley*, 581 F.3d at 406 (internal citations omitted). Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 11, 2017          s/Anthony P. Patti

                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

I hearby certify that a copy of the foregoing document was sent to parties of record on August 11, 2017, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti